(163 App. Div. 96)

RUBACK v. McCLEARY, WALLIN & CROUSE.

(Supreme Court, Appellate Division, Third Department. July 1, 1914.)

1. MASTER AND SERVANT (§ 177*)—LIABILITY FOR INJURY TO SERVANT—NATURE OF ACT.

The failure of a servant to keep proper watch on the gauge of a tank and to shut off the pump when the gauge indicated too high pressure was the failure of a coservant, and not of defendant itself.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 307, 352, 353; Dec. Dig. § 177.*]

2. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—QUESTION FOR JURY—SAFETY DEVICE.

In an action for an injury to a servant caused by the explosion of a tank, evidence *held* to require the submission to the jury of the question whether, in view of the condition of the water used, the regulator on the tank was a sufficient safety device.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

3. MASTER AND SERVANT (§ 201*)—FELLOW SERVANTS—CONCURRENT NEGLIGENCE OF MASTER AND FELLOW SERVANT.

If an accident was caused by the negligence of the master in failing to provide a tank with a sufficient safety device, the master would be liable, though the negligence of a fellow servant contributed to the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*]

Appeal from Trial Term, Montgomery County.

Action by William Ruback against McCleary, Wallin & Crouse. Judgment for defendants (143 N. Y. Supp. 86), and plaintiff appeals. Modified and affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Homer J. Borst, of Schenectady (Andrew J. Nellis, of Albany, of counsel), for appellant.

Kernan & Kernan, of Utica, for respondents.

SMITH, P. J. This is a negligence action. At the close of the evidence a motion for a nonsuit was reserved and a general verdict taken, which verdict favored the plaintiff. Thereafter a motion was made for a new trial upon all the grounds specified in section 999 of the Code. In the final disposition of the case the court denied the motion for a new trial upon all points, except that the negligence was the negligence of a coemployé, and upon that ground the motion for a new trial was granted and the motion for a nonsuit granted. From the order thus determining the case this appeal has been taken.

· *For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[1, 2] The defendants operated some rug and carpet mills in the city of Amsterdam. The plaintiff was in their employ, working upon an extractor, the purpose of which machine was to extract water from the raw material. Within a short distance from him was a pressure tank. Into this tank water was forced from a cistern below by a pump through a pipe five inches in diameter. The air in the top of the tank became compressed, which produced the force which sent the water to different parts of the building. In this tank was a regulator. That regulator consisted of a small pipe, which was so adjusted by weights as when operating to relieve the pressure in the pressure tank, whenever the pressure got to a point at which it was desired to be regulated. This regulator was apparently the one ordinarily used in such tanks, and was apparently sufficient safety device, except for the fact that in this water which passed through was a certain amount of waste which came from mills above the defendants' mill upon the stream from which the water was taken. At various times this waste would get in this regulator, when it would clog up and fail to give the relief which it was intended to give, and the pressure would mount up. There was a gauge upon the upper part of this tank which indicated the pressure, and the man who had charge of the pump was expected to keep watch of this gauge, and if the gauge should show that the pressure was mounting up to stop the pump. Upon the day of the accident the regulator was so adjusted by weights as to permit a pressure of 105 pounds as a maximum. The man in charge of the pump, one Sanders, was watching the gauge and saw that it mounted up to 120. At this point he started to turn off the pump, when a fuse blew out and the tank exploded, thereby causing the plaintiff's injuries.

It appears from the evidence that this regulator had become clogged some five or six times previously, so that the chief mechanic had been called upon to take apart the regulator and clean it out. In each instance it appears to have been clogged from the waste which came from the mills above that of the defendant upon the stream. It appears further that at times there would be a partial clogging, where the gauge would jump ahead and the obstruction be forced through, bringing the regulator back to its normal condition. It appears that the regulator had been cleaned out about two weeks before this accident. The trial court submitted to the jury, among other grounds of negligence, whether Sanders, who had charge of the pump, and whose duty it was to keep track of this gauge, had failed in his duty of inspection, and, if so, whether such failure was simply in the detail of the work, or was a failure in respect of a duty which the defendants owed to the plaintiff and for which the master would be liable. The learned court erred in submitting this question to the jury. Sanders was not given the duty of inspecting the regulator. His duty was to watch the gauge, to see that the regulator was working properly, and, if the pressure rose above the proper mark, to stop the pump. To my mind this is clearly a detail of the work. It is true that the master is bound to furnish a safe place to work, but where, in the routine of the business, certain constant daily duties are required in order to keep such place a safe place, those duties are the duties of a fellow servant

and not the duty of the master: A track repairer in a switch yard is entitled to a safe place to work. To render that place safe, the engineers who run the switch engines are required to give warning of their approach. A failure to give such warning is the failure of the coservant and not the failure of the master. So here the failure of Sanders to keep proper watch of the gauge, and immediately to shut off the pump when the gauge indicated too high pressure, was the failure of a coservant and not of the defendant itself. For this reason the trial judge was in our judgment clearly right in granting to the defendants a new trial.

Assuming, however, that this accident was the result in part of the negligence of Sanders, it does not follow that the defendants are not liable, or that the motion for a nonsuit should have been granted. A defendant may be liable for negligence, even though the accident were contributed to by the negligence of a coservant. Authority is not necessary to this proposition now so well established.

[3] One of the charges of negligence in the plaintiff's complaint was the failure to have upon this pressure tank a proper safety device. While this regulator was the one usually used upon these pressure tanks, and ordinarily furnished as a safety device, the conditions here were unusual. The water which was forced through this tank had in it the waste from other mills from the stream above. A regulator which may be sufficient, and a safety device, with the use of ordinary water, may be and has in this case apparently been proven wholly insufficient, where the water contained this material which clogged the regulator. It was clearly a question for the jury whether, in view of this condition of the water that was used, this regulator was a sufficient safety device, and if the jury should find that this was not a sufficient device, and that by failure to provide such a device this accident was caused, even though contributed to by the negligence of Sanders, the plaintiff would be entitled to a verdict for his damages. No evidence was given upon the question as to whether this water could have been screened so as to prevent this waste from getting into the pipes. If such had been done, the regulator would probably have been sufficient. But, even if such screening would not be effective, the question still remains as to whether some further safety device should not have been provided to relieve the pressure when this regulator became clogged.

It follows, then, that the motion for a new trial was properly granted, but the motion for a nonsuit was improperly granted. The order should be modified by striking out therefrom the direction for a nonsuit, and, as modified, affirmed, with costs to appellant to abide the event.

Order modified by striking therefrom direction for nonsuit, and, as modified, affirmed, with costs to appellant to abide event. All concur.